STATE OF NORTH CAROLINA v. CARL SMILEY WYNNE

No. 541A88

(Filed 14 August 1991)

**1. Jury § 7.11 (NCI3d) — death penalty views — excusal for cause**

A juror was properly excused for cause because of his death penalty views where the juror stated that he could not recommend the death penalty under any circumstances.

**Am Jur 2d, Jury § 289.**

**Comment Note — Beliefs regarding capital punishment as disqualifying juror in capital case — post Witherspoon cases. 39 ALR3d 550.**

**2. Jury §§ 7.8, 7.10 (NCI3d) — excusal for cause — emotional juror — working with defendant's mother**

One juror was properly excused for cause in a first degree murder trial because of her inability to sit through the trial without becoming emotional, and a second juror was properly excused for cause because she had worked with defendant's mother for many years and would find it difficult to continue to do so if the jury imposed the death penalty.

**Am Jur 2d, Jury §§ 271, 281.**

**3. Criminal Law § 33.2 (NCI3d); Homicide § 17 (NCI3d) — racist sign — attendance at Klan rally — admissibility to show motive**

Testimony in this prosecution of a white defendant for first degree murder of a black victim that a sign over the door of the mobile home in which defendant lived asserted that blacks were not allowed there and pictured a Confederate flag and that defendant attended a Klan march after the killing was relevant and admissible to show motive where no evidence other than race was presented as to why the attack on the victim began. Moreover, defendant waived his right to appellate review of the admission of evidence pertaining to the sign and Confederate flag when a photograph of the outside of the mobile home, in which the sign was visible, was introduced without objection.

**Am Jur 2d, Homicide §§ 280, 440.**

STATE v. WYNNE

[329 N.C. 507 (1991)]

4. **Homicide § 15 (NCI3d) — evidence that victim was slow, retarded, honest and polite — competency**

Evidence that the victim was "slow" or "retarded" and that he was honest and polite was properly admitted during the guilt phase of this first degree murder trial. Cases pertaining to victim impact statements are inapposite to this evidence because they involved only penalty phase evidence and arguments.

**Am Jur 2d, Homicide §§ 301, 554.**

5. **Homicide § 20.1 (NCI3d) — color photographs and slides — decomposition of body**

The trial court did not abuse its discretion in allowing the State to present three color photographs and four color slides picturing the murder victim's body and in allowing testimony concerning the decomposition of the body.

**Am Jur 2d, Homicide §§ 417, 419.**

**Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.**

6. **Homicide § 28.6 (NCI3d) — first degree murder — defense of voluntary intoxication — instruction not required**

The evidence in a first degree murder trial failed to show that defendant was utterly incapable of premeditating and deliberating the killing so as to require the trial court to give defendant's requested instruction on voluntary intoxication where the evidence revealed only that defendant and his companions consumed two fifths of liquor and smoked marijuana prior to the killing; defendant presented no definitive evidence regarding the amount of alcohol he consumed; and defendant was able to give police a detailed account of the crime days after it occurred.

**Am Jur 2d, Homicide §§ 127-129, 133.**

**Modern status of the rules as to voluntary intoxication as defense to criminal charge. 8 ALR3d 1236.**

7. **Criminal Law § 65 (NCI3d)— testimony that victim appeared frightened—admissibility**

Testimony that the victim was shaking and appeared frightened prior to his death was relevant and admissible in this first degree murder trial.

**Am Jur 2d, Homicide § 320.**

8. **Conspiracy § 5.1 (NCI3d); Criminal Law § 79 (NCI3d)— statement by defendant or another—evidence of conspiracy—admissibility against defendant**

Even though a witness did not know whether defendant or another man told a murder victim to "bring his black ass on" and defendant and the other man were not charged with criminal conspiracy or tried jointly for the murder, the statement was admissible against defendant where defendant's own confession established a conspiracy between defendant and the other man to kill the victim.

**Am Jur 2d, Conspiracy §§ 43, 44.**

9. **Criminal Law § 74.2 (NCI3d)— codefendant's statement—reference to "we"—harmless error**

Assuming that a detective's testimony concerning a codefendant's statements referring to where "we" left the body was erroneously admitted in defendant's trial for first degree murder, such error was harmless where the trial court eventually struck all testimony concerning the codefendant's statements about what defendant said and did, and where the statement corroborated defendant's subsequently admitted confession in which defendant stated that he and the codefendant dumped the body where it was found.

**Am Jur 2d, Evidence § 539.**

10. **Criminal Law § 74 (NCI3d)— defendant's statement concerning capital punishment—admissibility to show circumstances of confession**

Statements made by defendant to law officers during interrogation in a murder case to the effect that he did not care if he received capital punishment were relevant to the circumstances surrounding defendant's confession and admis-

STATE v. WYNNE

[329 N.C. 507 (1991)]

sible to show that he understood the nature of the interrogation at the time he made the confession.

**Am Jur 2d, Evidence §§ 545, 549.**

11. **Criminal Law § 34.7 (NCI3d)— condition of probation— corroboration of confession as to motive**

Testimony by defendant's probation officer that a condition of defendant's probation was that he commit no criminal offense was admissible to corroborate defendant's confession that the reason he killed the victim was to avoid identification after his initial assault on the victim because he feared that his probation would be revoked and he would return to jail.

**Am Jur 2d, Evidence §§ 530, 1136.**

12. **Criminal Law § 101 (NCI4th)— defendant's statements to witness—failure to provide timely discovery—allowance of testimony by witness**

Although the trial court found that incriminating statements made by defendant to a codefendant's mother were not disclosed to defendant until two days after they should have been disclosed pursuant to N.C.G.S. § 15A-903(a)(2), the trial court did not err by permitting this witness to testify about the statements where the court limited her testimony to what was already in evidence and previously provided in discovery, the substance of defendant's statements to the witness was substantially the same as his confession to police, and it is unlikely that knowledge of defendant's additional confession to the witness would have significantly affected defense strategy.

**Am Jur 2d, Depositions and Discovery §§ 428, 431.**

13. **Criminal Law § 554 (NCI4th)— loading victim into vehicle— testimony struck—mistrial not required**

The trial court properly denied defendant's motion for a mistrial in a first degree murder case when an officer testified that defendant told another officer that the victim was loaded into a vehicle and the trial court struck this testimony on the basis that defendant had not made such a statement where similar evidence placing the victim in a codefendant's truck after defendant's assault on him was introduced through other witnesses.

**Am Jur 2d, Trial § 127.**

**14. Criminal Law § 75.11 (NCI3d) — custodial interrogation — waiver of right to counsel**

Assuming arguendo that defendant's Sixth Amendment right to counsel attached when an arrest warrant was served upon him, defendant waived his Sixth Amendment right to counsel before he was questioned by officers where the record shows that an officer told defendant he was being questioned about a specific murder and that he could receive the death penalty; the officer read defendant his *Miranda* rights; as each right was read to him, defendant said that he understood it; defendant specifically said that he understood that he had the right to have a lawyer present while he was being questioned and further stated that he did not wish a lawyer to be present; the officer then read the waiver of rights form to defendant; defendant read the rights form and the waiver of counsel form; and defendant then stated that he understood his rights and the waiver, initialed each of the rights, and signed his name to the waiver of counsel form.

**Am Jur 2d, Criminal Law §§ 793, 794, 797.**

**15. Criminal Law § 468 (NCI4th) — jury argument — reference to jurors by name — no impropriety**

The trial court did not commit plain error in allowing the prosecutor in her closing argument to refer to the jurors by name in asking each of the jurors to have no doubt about defendant's guilt of first degree murder.

**Am Jur 2d, Trial § 232.**

**Prejudicial effect of counsel's addressing individually or by name particular juror during argument. 55 ALR2d 1198.**

**16. Criminal Law § 1352 (NCI4th) — death penalty — McKoy error — remand for resentencing**

A sentence of death for first degree murder was vacated and remanded for *McKoy* error in the trial court's instructions requiring unanimity on mitigating circumstances where the jury failed unanimously to find the statutory impaired capacity mitigating circumstance, and a juror reasonably might have found this circumstance to exist on the basis of evidence that defendant had suffered from an alcohol problem for some time; he consumed alcohol and smoked marijuana shortly before the

STATE v. WYNNE

[329 N.C. 507 (1991)]

murder; and defendant had been examined for psychological problems by a mental health professional as recently as 1986.

**Am Jur 2d, Criminal Law § 628.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

Justice MEYER concurring in part and dissenting in part.

Justice MITCHELL joins in this concurring and dissenting opinion.

APPEAL as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment sentencing him to death for conviction of murder in the first degree, entered by *Allsbrook, J.,* at the 24 October 1988 Criminal Session of Superior Court, HALIFAX County. Heard in the Supreme Court 8 April 1991.

*Lacy H. Thornburg, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, and Linda Anne Morris, Assistant Attorney General, for the State.*

*Richard B. Glazier for the defendant-appellant.*

MARTIN, Justice.

Defendant was convicted of murder in the first degree and kidnapping and was sentenced to death. Our review of the record reveals no error in the guilt phase of defendant's trial. We vacate the sentence of death and remand for a new sentencing proceeding on the conviction of murder in the first degree.

The victim, Aaron Parker, was a mentally retarded black male, who lived with his family near Roanoke Rapids, North Carolina. On the evening of 21 April 1988, Aaron left home at 7:30 p.m. to cut the grass at the home of a neighbor, Louise Heustess. Aaron's sister testified that Aaron appeared to have been drinking prior to leaving home.

On 21 April, defendant and his girlfriend, Debbie Willey, together with John Wright and his girlfriend, all of whom were white, lived at a rented mobile home near Ms. Heustess's house. A sign above the mobile home door admonished that black people were not allowed in the mobile home and pictured a Confederate flag. Inside the mobile home, Wright kept a snake in an aquarium.

Phillip Rook testified that he drove to Wright's mobile home about 7:30 p.m. on 21 April. While Rook was there, defendant got into a fight with Jimmy Nowell and then smoked marijuana with him and a group of others. Later, Aaron Parker arrived at the mobile home and offered to buy beer. At some point during the evening, Wright showed Aaron his six-foot boa constrictor. Aaron was afraid of the snake and left the mobile home when Wright took it out of the aquarium. Rook took Aaron to a country store, but Aaron was unable to purchase beer because he did not have enough money. Rook told Aaron that it was not a good idea for Aaron to return to the mobile home because nobody wanted him there.

Cathy Daniels, owner of the country store, corroborated Rook's story that Aaron had attempted to purchase beer late that evening. When Aaron returned the beer to the cooler, Rook told him that the others would be angry and "you know what's gone happen." The pair left, but Aaron came back and tried to buy a single beer which Daniels refused to sell to him because she believed that he was already intoxicated before Rook left the scene.

Rook testified that he left Aaron at the store and returned to Wright's mobile home alone. Aaron returned to the mobile home on foot. Debbie Willey beat Aaron with a four-foot-long stick, and defendant knocked him out the door. Aaron laid out in the yard for a period of time.

Wright's neighbors testified that they saw Aaron in the company of defendant and Wright on the evening of 21 April. They also heard noises coming from the mobile home that sounded like people falling. Eva Whitaker testified that after midnight, she passed a truck occupied by two white males and Aaron Parker. Aaron was seated between the two white men and had his mouth open. Whitaker did not see Aaron make any movements.

John Wright's mother, Norma Wright, testified that on 24 April 1988, defendant came to her home looking for John. Defendant told her that he had killed a black man. Defendant said that Debbie had beaten the man across the legs with a stick, and that he had killed the man to avoid identification as a participant in the assault, which was a violation of his parole and would send him back to prison.

STATE v. WYNNE

[329 N.C. 507 (1991)]

On 27 April 1988, defendant made a statement to law enforcement officers. Defendant admitted to stabbing Aaron Parker once in the chest after dumping his body in the area where it was found. Defendant said that he knocked the victim off the porch of the mobile home and then beat him before he and John Wright dumped him near a field. Defendant admitted that he killed the man because he was on probation and would have to go back to jail if he were convicted of assault. Other facts pertinent to this appeal will be discussed below.

### Jury Selection Issue

Defendant alleges in his first assignment of error that the trial court erred by excusing three jurors for cause due to their statements regarding their ability to consider capital punishment. The proper standard for determining whether a potential juror may be excused for cause based on his or her views on capital punishment is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)).

[1] Of the three jurors challenged for cause cited by defendant, only one was excused solely for his views on the death penalty. Juror Jones stated, when asked, that he could not recommend the death penalty under any circumstances. Under the standard set forth in *Wainwright v. Witt*, it is clear that juror Jones's beliefs regarding capital punishment would substantially impair his performance as a juror. 469 U.S. at 424, 83 L. Ed. 2d at 851-52.

[2] The other two excusals for cause challenged by defendant involved factors in addition to the jurors' views on the death penalty. Juror Foots repeatedly stated that she was too emotional to sit through the trial and began crying during her voir dire examination. She also stated that she did not believe that she could impose the death penalty. After stating that her sympathies for both the victim's family and the defendant would interfere with her ability to hear the case, Foots was excused for cause. The record reveals that Foots was excused primarily for her inability to sit through the trial without becoming emotional. We find no abuse of discretion in her excusal. *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359. Likewise, we find no abuse in the excusal of juror Conwell, who had worked with defendant's mother for twelve to thirteen

years. *Id.* Conwell stated that he would find it difficult to continue working with defendant's mother if the jury imposed the death penalty and that this consideration would interfere with his ability to consider the case. This assignment of error is overruled.

### Guilt Phase Issues

[3] Defendant next contends that the court erred in permitting the State to introduce evidence from the crime scene which indicated that defendant was a racist. Defendant filed a motion in limine requesting that the court bar the introduction of, or any reference to, the Confederate flag found at Wright's mobile home and a noose found near the flag. The motion also requested that the State refrain from reference to defendant's alleged participation in a Ku Klux Klan rally. The trial court did not rule on the motion, but cautioned the District Attorney against injecting race as an issue in the trial without prior notice to defendant. Defendant complains that a witness was allowed to testify about a sign over the door of Wright's mobile home asserting that blacks were not allowed there and picturing a rebel flag. Another witness testified that he had seen defendant at a Klan march after the killing. Defendant alleges that this evidence was not relevant within the meaning of Rule 401 of the North Carolina Rules of Evidence.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. N.C.G.S. § 8C-1, R. 401 (1988). Evidence having any logical tendency to prove a fact in issue is relevant. *State v. Whiteside*, 325 N.C. 389, 383 S.E.2d 911 (1989). Evidence of ill will between defendant and the victim is admissible as tending to show, *inter alia*, motive. *State v. Alston*, 307 N.C. 321, 298 S.E.2d 631 (1983). Although defendant stated that he killed the victim in order to avoid further incarceration for the assault, this explanation does not reveal why the attack began. No evidence other than race, as to why Aaron Parker was singled out for abuse, appears from the record. This evidence is clearly relevant. *Id.*

Moreover, defendant waived his right to appellate review of the admission of the evidence pertaining to the sign and Confederate flag at Wright's mobile home. A photograph of the outside of the mobile home, in which the sign was visible, was introduced without objection. Defendant later objected to the witness displaying the photograph to the jury. Failure to make a timely objection at trial

amounts to a waiver of the right to assert error on appeal. N.C.G.S. § 15A-1446 (1988). This assignment of error is overruled.

[4]  In his third assignment of error, defendant argues that the trial court erred by allowing testimony about the mental capacity and character of the victim. During the guilt phase, various witnesses testified that Aaron was "slow" or "retarded" and that he was honest and polite. Defendant contends that the introduction of this evidence during the guilt phase of the trial violates the prohibition against victim impact statements of *Booth v. Maryland*, 482 U.S. 496, 96 L. Ed. 2d 440 (1987). *Booth* has recently been overruled in *Payne v. Tennessee*, --- U.S. ---, --- L. Ed. 2d --- (1991). However, these cases are inapposite to the case at bar because only penalty phase evidence and arguments were at issue in *Booth* and *Payne*. Here, the evidence was presented at the guilt phase, but was also argued at the penalty phase. Defendant does not argue that the evidence presented was not competent at the guilt phase of the proceedings. We hold that the evidence was properly admitted. Because we have granted defendant a new sentencing hearing, we do not address the remainder of his contentions with respect to the penalty phase. Accordingly, we overrule this assignment of error.

[5]  Defendant next contends that the trial court erred by denying his motion to exclude photographs of the victim, by allowing the State to show photographs and project color slides on a wall in the courtroom, and by allowing testimony concerning the decomposition of the body. The State presented three color photographs and four color slides picturing the victim's body and allowed testimony about the condition of the body when found, including the fact that it was infested with maggots.

The admissibility of photographs is subject to Rule 403 of the North Carolina Rules of Evidence, which states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C.G.S. § 8C-1, R. 403 (1988). Whether photographic evidence is admissible is within the sound discretion of the trial court. *State v. Sledge*, 297 N.C. 227, 254 S.E.2d 579 (1979). Generally, the fact

that a photograph of a murder victim is gruesome or gory does not render it inadmissible if it is otherwise competent. *State v. Harris*, 323 N.C. 112, 371 S.E.2d 689 (1988). Even where a body is in advanced stages of decomposition and the cause of death and identity of the victim are uncontroverted, photographs may be exhibited showing the condition of the body and its location when found. *Id.* In *State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988), this Court held that a trial judge should "examine both the content and the manner in which photographic evidence is used and . . . scrutinize the totality of circumstances composing that presentation." *Id.* at 285, 372 S.E.2d at 527.

We find no abuse of discretion in the admission of the photographs in the case at bar. We cannot say that the trial court's ruling was so manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision. *State v. Parker*, 315 N.C. 249, 337 S.E.2d 497 (1985). There is no evidence that the three photographs and four slides were used excessively or solely to arouse the passions of the jury. *State v. Murphy*, 321 N.C. 738, 365 S.E.2d 615 (1988). Accordingly, we overrule this assignment of error.

[6] We next examine defendant's contention that the trial court erred in failing to instruct the jury, as requested, on the defense of voluntary intoxication. Defendant argues that substantial evidence was presented "which would support a conclusion by the judge that [defendant] was so intoxicated that he could not form a deliberate and premeditated intent to kill." *State v. Mash*, 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988). However, before submitting an instruction on voluntary intoxication, the trial judge must conclude that the defendant was "utterly incapable" of forming the necessary intent. *State v. Strickland*, 321 N.C. 31, 41, 361 S.E.2d 882, 888 (1987).

In the instant case, the evidence reveals that defendant *and his companions* consumed two fifths of liquor and smoked marijuana prior to the killing. As defendant concedes, the evidence of his intoxication is not overwhelming. He presented no definitive evidence regarding the amount of alcohol he consumed. Days after the murder, he was able to give police a detailed account of the crime. The evidence fails to show that defendant was utterly incapable of premeditating and deliberating the killing. *State v. Mash*, 323 N.C. 339, 372 S.E.2d 532. This assignment of error is without merit and is overruled.

[7] Defendant contends that the trial court erred by permitting various witnesses to testify that the victim was shaking and appeared frightened prior to his death. Defendant argues that such testimony was improper opinion under Rule 701 of the North Carolina Rules of Evidence. The State argues that the testimony was properly admissible to prove the victim's then existing state of mind. N.C.G.S. § 8C-1, R. 803(3) (1988). The testimony concerned the victim's fear, both shortly after being with defendant and while in the defendant's presence. We hold that this evidence was relevant, more probative than prejudicial, and therefore admissible. *See State v. Lynch*, 327 N.C. 210, 393 S.E.2d 811 (1990) (shortly before murder, victim was nervous and upset, with fear in her voice).

[8] In his next assignment of error, defendant argues that the trial court erred by allowing a witness to testify that she saw the victim running down the road with defendant and John Wright behind him and heard the victim say "Let me go man." Moreover, the witness testified that one of them told Aaron to "bring his black ass on." Defendant contends that because the witness could not tell who had spoken the words, the statement was inadmissible. He argues that if John Wright, whose case was not joined with defendant's, made the statement, then it was inadmissible hearsay.

We hold that the trial court did not err in admitting the statement. Where the State establishes a prima facie case of a conspiracy, independent of the declaration it seeks to admit, statements of co-conspirators are admissible, *State v. Nichols*, 321 N.C. 616, 365 S.E.2d 561 (1988), even if the co-conspirators are not charged with criminal conspiracy. *State v. Albert*, 312 N.C. 567, 324 S.E.2d 233 (1985). Defendant admitted in his confession that he and John Wright took the victim to a field after assaulting him. Defendant told Wright that he had to get rid of the victim to escape further incarceration and that he would take the blame for the crime. Defendant's own confession establishes a conspiracy to kill the victim, and therefore the statement, even if made by John Wright, is admissible against defendant. *State v. Nichols*, 321 N.C. 616, 365 S.E.2d 561. Defendant's assignment of error is overruled.

[9] We next examine defendant's contention that the trial court erred in denying his motion for a mistrial following the testimony of W.H. Wheeler, the detective who investigated the crime. Wheeler testified that John Wright led him to the area where they eventually discovered the victim's body. Wright pointed to an area and

## STATE v. WYNNE

[329 N.C. 507 (1991)]

said, "This is where we left the body." Wheeler then testified that Wright was referring to himself and the defendant when making that statement. Defendant's objection to this testimony was overruled. Later, the court sustained objections to testimony concerning Wright's statements about what defendant said and did. Defendant's motion for a mistrial, based on the references to "we," was denied on the basis that the defendant's own statement was substantially the same as Wright's. Wheeler, in fact, testified about defendant's confession shortly after recounting Wright's statement.

Assuming, *arguendo*, Wright's statement was erroneously admitted, we hold that the error was not prejudicial. Where improperly admitted evidence merely corroborates testimony from other witnesses, we have found the error harmless. *State v. Payne*, 312 N.C. 647, 325 S.E.2d 205 (1985). Here, the evidence was presented to explain how the body was discovered. The trial court eventually struck the references to the defendant and his conduct. Defendant's statement was then presented. In the confession, defendant stated that he and Wright dumped the victim's body in the area where it was found, which corroborated Wright's statement. We find no reasonable possibility that the jury would have reached a different result absent Wheeler's testimony. *See* N.C.G.S. § 15A-1443(a) (1988).

[10] Defendant further contends that the trial court erred in admitting statements he made to law enforcement officers to the effect that he did not care if he received capital punishment. Defendant argues that this evidence is irrelevant to the State's case for murder in the first degree. Even if relevant, he alleges, the statement is inadmissible under Rule 403 of the North Carolina Rules of Evidence because its weak probative value is outweighed by the danger of unfair prejudice to defendant. N.C.G.S. § 8C-1, R. 403 (1988).

The State argues, and we agree, that the statement pertains to defendant's state of mind at the time of the confession and is highly relevant. Defendant argued, prior to trial, that he was under the influence of alcohol and drugs at the time he made the confession and therefore did not understand the nature of the interrogation. Wheeler testified that he advised defendant of his rights and informed him that he was charged with murder in the first degree, an offense for which he could receive the death sentence. Defendant's motion to suppress the confession was denied, but the jury was instructed to consider the circumstances surrounding

the confession in determining the weight, if any, to give to it. Defendant's statement is clearly relevant to the circumstances surrounding the confession.

Moreover, defendant has waived his right to review on appeal because he failed to renew his objection when the statement was subsequently repeated by the witness. Any benefit of the prior objection was lost by defendant's failure to renew the objection. *State v. Brown*, 327 N.C. 1, 394 S.E.2d 434 (1990). This assignment of error is overruled.

[11]  Defendant next argues that the trial court committed reversible error in overruling his objection to the testimony of his probation officer, William Graham. Graham testified that he was defendant's probation officer and that a condition of defendant's probation was that he commit no criminal offenses. Defendant contends that this testimony had little relevance and amounted to cumulative evidence emphasizing defendant's prior criminal record, which was unduly prejudicial.

In his confession, defendant stated that the reason he killed Aaron Parker was to avoid identification in the initial assault. He feared that his probation would be revoked and he would return to jail. Graham did not testify about the nature of the crime for which defendant was originally jailed. We find no error in this testimony because it corroborates defendant's confession as to motive and was limited to the conditions of his parole and defendant's awareness of those conditions. *See State v. Parker*, 315 N.C. 222, 337 S.E.2d 487 (1985) (importance of corroborating defendant's confession in order to verify the trustworthiness of the confession itself). This assignment of error is without merit.

[12]  We turn next to defendant's contention that the trial court improperly admitted the testimony of Norma Wright. Defendant alleges that he was not provided timely discovery of the statements he allegedly made to Ms. Wright. North Carolina General Statute § 15A-903(a)(2) requires the State to divulge

the substance of any oral statement relevant to the subject matter of the case made by the defendant, regardless of to whom the statement was made, . . . the existence of which is known to the prosecutor or becomes known to him prior to . . . trial.

N.C.G.S. § 15A-903(a)(2) (1988). The statute requires disclosure of statements then known to the State by noon on the Wednesday prior to the beginning of the week during which the case is calendared for trial. *Id.* Here, the State became aware of the statement on the Saturday prior to the week the trial began, but did not disclose the statement until the following Wednesday. Defendant argues that the intent of the statute clearly requires immediate disclosure when new evidence comes to light after the Wednesday disclosure deadline. Although the trial judge agreed that the State should have revealed the substance of the statement two days earlier, he determined that it contained substantially the same information provided in statements disclosed earlier in discovery. The court allowed the State to present Ms. Wright as a witness two days later, but limited her testimony to what was already in evidence and previously provided in discovery.

Sanctions for failure to make timely discovery are within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion. *State v. Herring*, 322 N.C. 733, 370 S.E.2d 363 (1988). We find no abuse of discretion here. The substance of defendant's statement to Ms. Wright was substantially the same as his confession to police, other than his implication of Ms. Wright's son. Defendant did not request a delay to prepare for cross-examination. It is unlikely that knowledge of defendant's additional confession to Ms. Wright would have significantly affected defense strategy. This assignment of error is overruled.

**[13]** Defendant alleges that the trial court erred in not granting defendant's motion for a mistrial where Sam Sledge, a law enforcement officer, testified to a statement allegedly made by defendant. Sledge testified that defendant told W.H. Wheeler that he knocked Aaron off the porch of the mobile home. Sledge added that after the fight, the victim was loaded into a vehicle. Defendant objected on the basis that he never made the statement about loading the victim into a vehicle. The court sustained the objection and struck the testimony from the record, but denied defendant's motion for a mistrial. Defendant argues that mistrial was required because the testimony was irreparably prejudicial and was of such a nature that it would render a fair and impartial trial all but impossible under the law. *See State v. McCraw*, 300 N.C. 610, 268 S.E.2d 173 (1980); N.C.G.S. § 15A-1061 (1988).

**STATE v. WYNNE**

[329 N.C. 507 (1991)]

The granting of a motion for mistrial is within the sound discretion of the trial judge and is reviewable only upon a showing of abuse of discretion. *State v. Craig*, 308 N.C. 446, 302 S.E.2d 740, *cert. denied*, 464 U.S. 908, 78 L. Ed. 2d 247 (1983). The State argues that the trial court cured any error by sustaining the objection, striking the phrase, and cautioning the jury not to consider the testimony. We hold that defendant has not shown irreparable prejudice justifying a mistrial because similar evidence placing the victim in Wright's truck after the assault was introduced through other witnesses. This assignment of error is without merit.

We next examine defendant's contention that the trial court erred in denying his motion to suppress his confession because the confession was not voluntarily made and was taken in violation of his right to counsel. On the voluntariness issue, defense counsel makes no argument, but requests that this Court review the record in light of *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, *reh'g denied*, 388 U.S. 924, 18 L. Ed. 2d 1377 (1967). This approach is inappropriate in this situation because *Anders* requires certain procedural safeguards not followed here and generally applies only where counsel believes the whole appeal is without merit. *Id.* However, we have reviewed the record on this issue, and we hold that the trial court did not err in ruling that the confession was voluntarily made. Where the findings of fact support the conclusions of law, such findings and conclusions are binding upon us on appeal. *State v. Williams*, 308 N.C. 47, 301 S.E.2d 335, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L. Ed. 2d 704 (1983).

[14] Defendant argues that the confession was taken in violation of his constitutional right to counsel. U.S. Const. amend. VI. An arrest warrant was issued by a Halifax County magistrate on 26 April 1988, and defendant was arrested the next day. Defendant contends that his sixth amendment right to counsel attached at the time of arrest. In *Brewer v. Williams*, 430 U.S. 387, 51 L. Ed. 2d 424, *reh'g denied*, 431 U.S. 925, 53 L. Ed. 2d 240 (1977), the United States Supreme Court held that the right to counsel attaches when adversary judicial proceedings are initiated against a suspect, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." 430 U.S. at 398, 51 L. Ed. 2d at 436 (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417 (1972) ). Defendant contends that a formal charge within the meaning of *Williams* was initiated when the magistrate

found probable cause and issued an arrest warrant. He argues, therefore, that the questioning that occurred on 27 April was a "critical stage" of the proceedings against him to which the sixth amendment right to counsel applied. *Kirby v. Illinois*, 406 U.S. at 690, 32 L. Ed. 2d at 418.

Assuming *arguendo* that defendant's sixth amendment right to counsel attached when the arrest warrant was served upon him, we hold that defendant waived his sixth amendment right to counsel before he was questioned by the officers.

The transcript shows that when the officers arrived at his mother's house, he was on the front porch. His parents were also there. When the officers arrested defendant pursuant to the warrant, they did not attempt to talk with him about the case. Debbie Willey, who was with defendant when he was arrested, was also taken into custody. Defendant was taken to the sheriff's department.

Detectives Wheeler and Sledge first talked with Debbie Willey and then defendant. Before advising defendant of his *Miranda* rights, Detective Wheeler told defendant he was being questioned about the murder of Aaron Parker and that he could receive the death penalty. Wheeler read defendant his *Miranda* rights. As each was read to him, defendant said that he understood it. Defendant specifically said that he understood that he had the right to have a lawyer present while he was being questioned. He also stated, "I do not wish a lawyer to be here. I'm going to tell the truth." The officer then read the waiver of rights form to defendant. Defendant read the rights form and the waiver of counsel form. He stated that he understood his rights and the waiver, and then he initialed each of the rights "CSW" and signed his name to the waiver of counsel form.

Defendant then gave the officer a statement about the crime. Eventually, he told the officers that he did not want to say anything else until he talked with a lawyer.

The officers testified that defendant appeared normal during the interview and that they did not smell any alcohol on him. He did not appear to be sleepy, angry or upset, but was cooperative and appeared to be mentally alert. In the opinion of the witnesses, defendant was not under the influence of drugs or alcohol; his speech was clear and understandable. Defendant did not appear to be in fear.

The defendant produced conflicting evidence as to the amount of alcohol he had consumed and whether he was under the influence of intoxicants at the time of the interview.

Upon the evidence presented, the trial judge made the necessary findings as appear of record. The evidence concerning whether defendant was so intoxicated that he was unable to make a voluntary and knowledgeable confession was reconciled by the trial judge against the defendant. The trial judge's conclusions of law were supported by the findngs of fact which in turn were supported by the evidence.

We hold the trial judge's denial of defendant's motion to suppress was not error. See State v. Williams, 308 N.C. 47, 301 S.E.2d 335 (1983) (Where findings of fact are supported by evidence and such findings support the conclusions of law found by the trial court, they are binding upon appeal.).

[15] Defendant further contends that the trial court committed plain error in allowing the prosecutor to refer to the jurors by name in her closing guilt phase argument and, subsequently, failing to instruct the jury to disregard such references. In her closing argument, the assistant district attorney argued the evidence and urged the jury to find a unanimous verdict of guilty of murder in the first degree, on both the felony murder theory and premeditation and deliberation. She then continued as follows:

> Have no doubt Miss Pearson, Mr. Faison; y'all have no doubt, Mrs. Barnes, Mrs. White, Mr. Tillery, Ms. Jones, Mrs. Baggett, Mr. Lewis; have no doubt, Mrs. Biggs, Mrs. Williams, Mrs. Patton; and if you, if you are at some point impanelled to deliberate, have no doubt Mrs. Lewis, have no doubt Mrs. Long, Ms. Silver, return a verdict of guilty in the first degree of kidnapping, and murder.

Defendant urges this Court to apply the principles enunciated in State v. Holden, 321 N.C. 125, 362 S.E.2d 513 (1987), cert. denied, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). In Holden, we held that in the penalty phase, the trial court properly sustained the State's objection to defense counsel's argument asking each juror individually to spare defendant's life. Holden, 321 N.C. at 163, 362 S.E.2d at 537. That argument was improper because "it asked each individual juror to decide defendant's fate on an emotional basis . . . and in disregard of the jurors' duty to deliberate with the entire jury

toward the end of reaching a unanimous verdict." *Id.* In the instant case, the prosecutor merely asked the individual jurors to have no doubt, not to disregard their duty to deliberate together and reach a unanimous verdict. The rule in *Holden* was not violated. We hold that there was no plain error in the prosecutor's argument.

With regard to the sufficiency of the evidence, defense counsel asks this Court to review the record and decide the issue in accordance with *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493. Again, we find this approach inappropriate, but we have considered the issue. After a thorough review of the record on appeal, including the transcript and briefs, we hold that there was sufficient evidence to submit the issues to the jury. Accordingly, we overrule this assignment of error. In the guilt phase of the trial, we find no prejudicial error.

### Penalty Phase Issues

[16] In the penalty phase, the trial court instructed the jury that it must unanimously find each mitigating circumstance before considering that circumstance in the ultimate sentencing decision. This was error under *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369, *on remand*, 327 N.C. 31, 394 S.E.2d 426 (1990). This error requires this Court to order a new sentencing proceeding unless the State can demonstrate beyond a reasonable doubt that the error was harmless. *State v. McNeil*, 327 N.C. 388, 395 S.E.2d 106 (1990); *State v. McKoy*, 327 N.C. 31, 394 S.E.2d 426. In this case, the State concedes *McKoy* error, but argues that the error was harmless beyond a reasonable doubt.

This Court has recognized the constitutional importance of preserving the ability of the jury to consider, under proper instructions, all of the evidence that could reasonably mitigate the sentence in a capital case to something less than death. *State v. McKoy*, 327 N.C. 31, 394 S.E.2d 426. In the instant case, the jury found the following two aggravating circumstances: that the murder was committed for the purpose of avoiding a lawful arrest and that the murder was committed while defendant was engaged in the commission of the crime of kidnapping. The following five mitigating circumstances were submitted to the jury:

STATE v. WYNNE

[329 N.C. 507 (1991)]

(1) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired.

ANSWER No

(2) Any of the following circumstance or circumstances arising from the evidence which you find to have mitigating value:

a. The defendant voluntarily called deputies when he learned of the warrant for the capital offense against him.

ANSWER Yes

b. The defendant voluntarily and peacefully surrendered himself to law enforcement officials.

ANSWER Yes

c. The death of a childhood companion and the heart attack of his father created a sense of isolation and despair with the Defendant.

ANSWER No

3. Any other circumstance or circumstances arising from the evidence which you the jury deem to have mitigating value.

ANSWER No

As in *State v. Payne*, 328 N.C. 377, 402 S.E.2d 582 (1991), we need to examine only the mitigating circumstance of impaired capacity on the part of the defendant, N.C.G.S. § 15A-2000(f)(6) (1988), because there was evidence tending to support this circumstance. Defendant had suffered from an apparent alcohol problem for some time before the commission of this crime. There was evidence introduced in the penalty phase that shortly before the murder of Aaron Parker defendant had consumed alcohol and smoked marijuana. Additionally, there was evidence that defendant, at least as recently as 1986, had been examined for psychological problems by a mental health professional, Dr. Alford, of the Halifax Mental Health Department. This evidence could support a reasonable inference that defendant had psychological problems, was intoxicated at the time of the crime, and, as a result, his ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired. *State v. Payne*, 328 N.C. 377, 402 S.E.2d 582.

STATE v. WYNNE

[329 N.C. 507 (1991)]

We cannot say beyond a reasonable doubt that, absent the unanimity instruction, no juror could have found the existence of this mitigating factor, weighed it in the final balancing process in deciding between life imprisonment and death and, having done so, concluded that life imprisonment should have been imposed. The prejudice from the improper instructions on this mitigating circumstance is manifest because this circumstance is statutory and, therefore, is deemed to have mitigating value. *Id.*

## Preservation Issues

The defendant raises ten additional issues which he concedes have been recently decided against him by this Court. They are:

1. The bill of indictment was fatally defective because it fails to allege premeditation and deliberation.

2. The death penalty statute is unconstitutional as being vague, overbroad, and imposed in a discriminatory manner.

3. Death qualification of the jury violated defendant's constitutional rights to an impartial jury.

4. The court erred in failing to require the prosecution to disclose the aggravating circumstances on which it intended to rely.

5. The court erred by allowing the prosecutor to use peremptory challenges on the basis of the juror's opposition to the death penalty.

6. The court erred in overruling defendant's objections concerning the use of the aggravating factor that the killing was committed while the defendant was engaged in the commission of a kidnapping.

7. The court instructed the jury that defendant had the burden of proving mitigating circumstances to the satisfaction of the jury.

8. The court's instructions which placed defendant in jeopardy of his life if the jury determined that the mitigation was insufficient to outweigh the aggravation constitute error.

9. The instruction that the jury had a duty to return a recommendation of death, if it found the aggravating circumstances in the light of the mitigating circumstances were sufficiently substantial to call for the imposition of the death penalty, constitutes error.

10. The trial court erred in sentencing defendant to die because the sentence was not supported by the evidence, and the sentence

was recommended under the influence of passion, prejudice, and other arbitrary factors.

Defense counsel with commendable candor concedes that these issues were raised merely to give this Court an opportunity to reexamine our previous holdings, and if we adhere to those holdings, to preserve the issues for later review by the federal courts. Having considered the arguments made by the defendant on these issues, we find that defendant has failed to provide the Court with any compelling reason to depart from our prior holdings. Therefore, these assignments of error are overruled.

We find no error in the guilt phase. Having found prejudicial *McKoy* error, we therefore vacate the sentence of death and remand this case to the Superior Court, Halifax County for a new capital sentencing proceeding.

Guilt phase: No error.

Penalty phase: Death sentence vacated and case remanded for new capital sentencing proceeding.

Justice MEYER concurring in part, dissenting in part.

I concur in the majority's opinion as to the guilt phase, but I dissent as to the majority's conclusion that there was error in the sentencing phase requiring a new sentencing proceeding. While I concede the presence of *McKoy* error, I question whether defendant properly preserved his *McKoy* issue for review by this Court, and even assuming that he did, I am convinced that the error was harmless beyond a reasonable doubt.

The trial court submitted to the jury two aggravating circumstances. The jury unanimously found that the murder was committed for the purpose of avoiding a lawful arrest and that the murder was committed while defendant was engaged in the commission of the crime of first-degree kidnapping.

The court also submitted five mitigating circumstances, and the jury unanimously found that "defendant voluntarily called deputies when he learned of the warrant for the capital offense against him" and that "defendant voluntarily and peacefully surrendered himself to law enforcement officials." The jury did not unanimously find the existence of the other three mitigating cir-

cumstances: "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired," "the death of a childhood companion and the heart attack of his father created a sense of isolation and despair with the defendant," or the catchall, "any other circumstance or circumstances arising from the evidence which you the jury deemed to have mitigating value."

The trial court instructed the jury at sentencing that unanimity would be required concerning the determination of aggravating circumstances under Issue One, mitigating circumstances under Issue Two, and the weighing of these issues under Issue Three. On Issue Four, the court correctly instructed the jury as follows:

> In deciding this issue, you are not to consider the aggravating circumstances standing alone. You must consider them in connection with any mitigating circumstances present from the evidence. *Even if you, the jury, has not found unanimously the existence of a certain proposed mitigating circumstance, if an individual juror believes that a mitigating circumstance has been proved by a preponderance of the evidence in this case, that juror may consider that mitigating circumstance in his evaluation of whether the aggravating factors are sufficiently substantial to call for the imposition of the death penalty.* . . . You, the jury, must determine how compelling and persuasive the totality of the aggravating circumstances are when compared with the totality of the mitigating circumstances present from the evidence. *Again, each individual juror in making this determination, may consider any mitigating factor he believes proved by a preponderance of the evidence, whether or not the mitigating factor was found by the jury unanimously to exist.* After so doing, if you are satisfied beyond a reasonable doubt that the aggravating circumstances found by you are sufficiently substantial to call for the death penalty, it would be your duty to answer the issues, "yes." If you are not so satisfied or have a reasonable doubt, it would be your duty to answer the issues, "no."

(Emphasis added.)

The State does not dispute that error occurred in the jury instruction for Issue Three; the issue is whether the error is prejudicial.

Defendant registered no objection at trial to the trial court's instructions. While this Court has adopted a special rule for certain instances of *McKoy* error in which a defendant is not required to object to unanimity instructions, the special rule does not apply to the instant case. The special rule applies "[a]t least for all trials conducted after *State v. Kirkley*, 308 N.C. 196, 302 S.E.2d 144 (1983), and before *Mills v. Maryland*, 486 U.S. 367, 100 L. Ed. 2d 384 (1988)." *State v. Sanderson*, 327 N.C. 397, 404, 394 S.E.2d 803, 806 (1990). The error in this case occurred five months after *Mills v. Maryland*. *Mills* was filed 6 June 1988, and this trial began over four months later on 24 October 1988. The court's instructions to the jury during the penalty phase of the trial occurred on 8 and 9 November 1988, five months after *Mills* was handed down.

Where a defendant fails to object to jury instructions at trial, this Court will review the challenged instructions under the plain error doctrine. *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989), *judgment vacated on other grounds*, --- U.S. ---, 111 L. Ed. 2d 777 (1990). Under that doctrine, the Court's review is limited only to "exceptional" cases containing "fundamental" error.

> "[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' . . . ."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted) (citations omitted)).

Assuming, *arguendo*, however, that defendant was not required to object at trial and that the issue is preserved, I disagree with the majority and conclude that the *McKoy* error was harmless, even under the less demanding standard of review. Where an objection is properly preserved for appeal, in order to find harmless error, this Court must find beyond a reasonable doubt that no different result would have been reached if the individual jurors had been permitted to consider mitigating circumstances not

unanimously found. *State v. Quesinberry*, 328 N.C. 288, 294, 401 S.E.2d 632, 635 (1991) (Meyer, J., dissenting) (citing cases). The burden is on the State to prove beyond a reasonable doubt that the jury would nonetheless have recommended death even if each individual juror had been allowed to consider all of the mitigating circumstances which he or she individually found to be present. *Id.*

Under the facts of this particular case, I am convinced beyond a reasonable doubt that the jury would have recommended the sentence of death even if the individual jurors had considered the three mitigating circumstances not unanimously found. A review of the record indicates that there was no evidence presented to the jury by which a reasonable juror could find any of the mitigating circumstances that the jury did not unanimously find to exist. *Id.* at 294-95, 401 S.E.2d at 635 (citing *State v. McKoy*, 327 N.C. 31, 44 n.4, 394 S.E.2d 426, 433 n.4 (1990)).

CIRCUMSTANCE: IMPAIRED CAPACITY

The majority concludes that there was adequate evidence to support this circumstance such that a reasonable juror might have found that mitigating circumstance in the absence of a unanimity requirement. I disagree. The evidence of impairment is sparse, attenuated, and completely unconvincing, and no reasonable juror would have found this circumstance to exist even had the jury been correctly instructed.

Defendant's evidence of impairment involves his statement that "they" had consumed two fifths of vodka and had smoked some marijuana without any indication whatsoever as to the amount defendant consumed. There was also testimony by defendant's mother' that defendant had undergone two psychological evaluations, one when defendant was approximately ten years old and another in 1986. Although it was not disclosed to the jury, there was an indication during a voir dire that the 1986 evaluation was ordered as a result of a first-degree burglary charge. The only evidence before the jury with regard to the 1986 psychological evaluation was that Dr. Alford of Halifax Mental Health examined defendant on 29 May 1986, and there was no evidence whatsoever before the jury as to the reason for the examination or its result. I conclude that it is questionable if there was sufficient evidence of diminished capacity to even submit the issue to the jury. The mere fact that it was submitted and rejected will not support a finding of prejudicial error.

STATE v. WYNNE

[329 N.C. 507 (1991)]

Defendant in this case tormented his victim with a snake, beat him, compelled him to buy alcohol, kidnapped him, and stabbed him. Under the facts of this case, no reasonable juror could determine that defendant was impaired.

CIRCUMSTANCE: DEATH OF A FRIEND AND
HEART ATTACK OF FATHER TEN YEARS EARLIER

The evidence is undisputed that defendant had a friend to die and that his father had a heart attack some ten years before this offense was committed. His father, however, was alive and in the courtroom, and it is difficult to conceive of how either of these events had any effect on defendant's killing of a retarded black male. Defendant's mother testified as follows:

> When Horace died, Carl drew inside of hisself (sic) and he felt like the world was against him and when his father had the heart attack, which wasn't but a couple of years later, it seemed to take his father away from him and he just didn't understand what was going on in the world.

Defendant's mother further testified that defendant cried at the Halifax County jail on 26 August 1988. I conclude that this evidence does not support a finding that defendant suffered from any unusual sense of isolation and despair, and nothing about this evidence reduces the culpability of the senseless murder of Aaron Parker. Simply because the trial court submitted this issue to the jury at defendant's request does not indicate that there is any possible mitigating value to this testimony. No reasonable juror could find this to have mitigating value.

CIRCUMSTANCE: CATCHALL

On appeal, defendant contends that there are three circumstances which could have been found under the "catchall." Defendant notes that his age, his alleged alcohol problem, and his limited criminal record are possible mitigating circumstances which the jury, if properly instructed, could have found.

A. *Defendant's age at the time offense occurred.*

Defendant was apparently twenty years old at the time he murdered Aaron Parker. Although the court specifically asked trial counsel if they wanted this circumstance submitted to the jury, they declined and therefore waived any right to have this matter submitted to the jury. However, defendant's attorney did argue

to the jury, over objection, that young people make mistakes and that defendant should be forgiven. In this case, defendant had been out on his own caring for himself, was living with his girlfriend, and was apparently working. He had been involved with the law and charged with several criminal offenses. The evidence shows defendant's physical and intellectual development and level of experience to be normal. Especially in light of the fact that defendant's counsel objected to the matter being placed in writing before the jury, no reasonable juror could have found this to have mitigating value, and age should not have been submitted to the jury. *See State v. Johnson*, 317 N.C. 343, 393-94, 346 S.E.2d 596, 623-24 (1986).

B. *Defendant's alleged alcohol problem.*

While there is a great deal of discussion in the record in this case about drinking, there is very little testimony of defendant's alleged "alcohol problem." Veronica Wynne testified that her brother drank many times, but "they didn't really drink that much for mama and daddy's sake." More importantly, defendant's alleged "alcohol problem" was not specifically submitted to the jury as a factor in mitigation, and defendant on appeal cites no testimony to support his contention that the jury, if properly instructed, could have found an "alcohol problem" to exist or that, if found, it would have had mitigating value. No reasonable juror could have found any mitigating value to the sparse testimony of alcohol abuse.

C. *Defendant's prior criminal record.*

Defendant specifically requested that the judge not submit the circumstance of no significant history of prior criminal activity. The reason for this request is obvious, as the State entered into the record the following criminal charges:

1. first-degree burglary,

2. felonious larceny (two counts),

3. felony breaking and entering a motor vehicle,

4. felony breaking and entering a motor vehicle,

5. wanton injury and destroying real property,

6. disorderly conduct,

7. simple assault,

8. having an unregistered vehicle,

9. having an expired inspection sticker,

10. possession of drug paraphernalia.

It is absurd to think that the jury, under proper instructions, could find in mitigation a circumstance that defendant successfully concealed from them. The fact that defendant kept his criminal record out of evidence during the sentencing proceeding should not be the source of prejudicial error in this case.

While I concede that *McKoy* error occurred during the sentencing proceeding, it is questionable whether it was properly preserved for review; and, in any event, it was harmless beyond a reasonable doubt. I find no other error in the sentencing proceeding and vote to affirm the sentence of death.

Justice MITCHELL joins in this concurring and dissenting opinion.