STATE v. BARNES

[330 N.C. 104 (1991)]

———————————

STATE OF NORTH CAROLINA v. ELWELL BARNES

No. 5A86

(Filed 3 October 1991)

1. **Criminal Law § 1352 (NCI4th)— death sentences—McKoy error—new sentencing proceeding**

Sentences of death for two first degree murders are vacated and the cases are remanded for resentencing because of *McKoy* error in the trial court's instructions requiring unanimity on

**STATE v. BARNES**

[330 N.C. 104 (1991)]

mitigating circumstances where substantial evidence supported mitigating circumstances submitted to but not found unanimously by the jury that defendant's participation in both murders was relatively minor, that he acted under the domination of another person, and that his low I.Q. impaired his ability to make judgments, and it cannot said beyond a reasonable doubt that the erroneous unanimity instruction did not preclude one or more jurors from considering in mitigation defendant's lesser and subordinate role in the two murders or his impaired mental abilities.

**Am Jur 2d, Criminal Law § 600; Trial § 1113.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

2. **Criminal Law § 1352 (NCI4th) — McKoy error — holdout juror — death sentence not arbitrary — life sentence not required**

Defendant failed to show that sentences of death were imposed under the influence of an arbitrary factor so as to require imposition of a sentence of life imprisonment under N.C.G.S. § 15A-2000(d)(2) where he showed that there was a holdout juror in the sentencing proceeding and that the death sentence recommendation could have been made because of the influence of the trial court's erroneous instruction requiring unanimity for finding mitigating circumstances on a jury eager to get home for the Christmas holidays.

**Am Jur 2d, Criminal Law § 600; Trial § 1113.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

ON remand by the United States Supreme Court, 494 U.S. ---, 108 L. Ed. 2d 602 (1990), for further consideration in light of *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). Heard on remand in the Supreme Court 12 September 1991.

*Lacy H. Thornburg, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, for the State.*

*Daniel W. Fouts, J. Alexander S. Barrett, and Amiel J. Rossabi for defendant appellant.*

WHICHARD, Justice.

Defendant was convicted of the first-degree murders of Jackie Ransom and Larry Jones at the 18 November 1985 Session of Superior Court, Robeson County, and sentenced to death for each murder. On appeal, this Court affirmed the convictions and the death sentences. *State v. Hunt*, 323 N.C. 407, 373 S.E.2d 400 (1988).

Subsequently, the United States Supreme Court vacated the judgment and remanded the case to this Court for further consideration in light of *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). *Barnes v. North Carolina*, 494 U.S. ---, 108 L. Ed. 2d 602 (1990). On 3 October 1990, this Court ordered the parties to file supplemental briefs addressing the *McKoy* issue. *State v. Barnes*, 327 N.C. 471, 397 S.E.2d 224 (1990).

The evidence supporting defendant's convictions and death sentences is summarized in this Court's prior opinion—*State v. Hunt*, 323 N.C. 407, 373 S.E.2d 400 (1988)—and will not be repeated here except as necessary to discuss the question before us on remand from the United States Supreme Court.

In *McKoy v. North Carolina*, the United States Supreme Court held unconstitutional under the Eighth and Fourteenth Amendments of the United States Constitution jury instructions in capital proceedings which require juries to be unanimous in the finding of mitigating circumstances. *McKoy*, 494 U.S. 433, 108 L. Ed. 2d 369. Our review of the record reveals, and the State concedes, that the jury here was so instructed. Specifically, the trial court instructed the jury to answer each mitigating circumstance "no" if it did not find the circumstance unanimously. The State further conceded in oral argument that it was unable to distinguish this case from recent decisions of this Court which held *McKoy* error harmful and awarded new capital sentencing proceedings. *See, e.g., State v. Wynne*, 329 N.C. 507, 406 S.E.2d 812 (1991); *State v. Artis*, 329 N.C. 679, 406 S.E.2d 827 (1991). We agree; therefore, we vacate the sentence of death and order a new capital sentencing proceeding.

The trial court submitted four possible mitigating circumstances for each murder:

1) This murder was actually committed by Henry Lee Hunt and Elwell Barnes was only an accomplice in the murder and his participation in the murder was relatively minor.

2) Elwell Barnes acted under the domination of another person.

3) The defendant, Elwell Barnes, has an I.Q. of 68 which impairs his judgment and insight in everyday living.

4) Any other circumstance or circumstances arising from the evidence which you the jury deem to have mitigating value.

The jury unanimously found circumstance (4), but rejected the other three.

The evidence relevant to the first mitigating circumstance not found — that the "murder was actually committed by Henry Lee Hunt and Elwell Barnes was only an accomplice in the murder and his participation was relatively minor" — came from the testimony of several witnesses at trial. This evidence consisted of testimony that Hunt said he killed Jackie Ransom; testimony from the only eyewitness that Hunt killed Jones, and Barnes mostly watched the whole episode; testimony from several witnesses that Hunt said he would kill Jones, bragged about killing Jones, and said he had to kill Jones because Jones would have saddled him with a life sentence; testimony that Hunt also bragged about killing Jackie Ransom and threatened to kill Rogers Locklear and Dottie Ransom if they did not pay *him* for the murder of Jackie Ransom; and testimony that, at all times, Hunt held the murder weapon.

Testimony at trial also supported the second rejected mitigating circumstance — that "Elwell Barnes acted under the domination of another person." There was testimony that each time Hunt and Barnes entered a car, Barnes always sat in back and Hunt in front; that Hunt ordered Barnes where to sit and Barnes complied; that Hunt told Barnes what to wear and not to wear, *e.g.*, to change his bloody clothes; that Hunt told Barnes not to use a shotgun on Larry Jones when it became apparent that Jones was not yet dead, Hunt finishing the job himself instead; and that Hunt tended to dominate everyone around him. During the sentencing phase, Dr. Robert Rollins testified that defendant is passive and is more a follower than a leader.

As to the third mitigating circumstance — "[t]hat Defendant, Elwell Barnes, has an I.Q. of 68 which impairs his ability to perform intellectual functions, and which impairs his judgment and insight in everyday living" — the evidence was uncontroverted that defendant has an I.Q. of 68, placing him in the borderline mental retardation range. As for his judgment abilities, defendant presented

evidence that he had to get instructions on how to dial information at a public telephone; that he was known by family and friends to have trouble controlling his own bodily functions; that he was unable to reason that he should dispose of blood-stained clothes and shoes and had to be told twice by Hunt to do so; and that he is illiterate.

Also relevant to the third mitigating circumstance was Dr. Leland Jones' testimony during the sentencing phase that defendant suffers from a chronic confusional state that could be due to organic brain disease or alcohol abuse. Dr. Jones also testified that he did not consider defendant's judgment or insight to be average.

Not submitted at the sentencing hearing, but argued by defendant as having mitigating value, are the circumstances that defendant did not have the capacity to appreciate the criminality of his actions, that the killings were committed while defendant was under the influence of mental or emotional disturbance, that defendant is a product of a deprived and socially deviant environment, that defendant has good character traits, and that defendant would make a good adjustment to prison life. Our disposition on the three mitigating circumstances submitted but not found makes it unnecessary for us to consider the effect of the erroneous instruction on these unsubmitted circumstances.

[1] Thus, the evidence presented at trial and during the sentencing proceeding supports reasonable inferences that defendant's participation in both murders was relatively minor, that he acted under the domination of another person, and that his low I.Q. impaired his ability to make judgments. *See State v. Payne*, 328 N.C. 377, 408, 402 S.E.2d 582, 600 (1991); *State v. Wynne*, 329 N.C. 507, 406 S.E.2d 812 (1991). Given the substantial evidence presented in support of these mitigating circumstances, we cannot conclude beyond a reasonable doubt that the erroneous unanimity instruction did not preclude one or more jurors from considering in mitigation defendant's lesser and subordinate role in the two murders or his impaired mental abilities. *See State v. McNeil*, 327 N.C. 388, 394, 395 S.E.2d 106, 110 (1990), *cert. denied,* --- U.S. ---, 113 L. Ed. 2d 459 (1991). Neither can we say beyond a reasonable doubt that no juror would have voted for life imprisonment rather than death if proper instructions on the mitigating circumstances had been given. *See State v. Quesinberry*, 328 N.C. 288, 293, 401

S.E.2d 632, 634 (1991). This is especially so here in light of the fact that one juror held out, presumably unwilling to impose death sentences, for several hours. *See infra.*

In a factually similar case involving the same three mitigating circumstances, we held that the defendant was entitled to a new sentencing proceeding. *State v. Robinson,* 327 N.C. 346, 395 S.E.2d 402 (1990).

[2] Defendant also argues that the sentences of death should be vacated and sentences of life imprisonment imposed pursuant to N.C.G.S. § 15A-2000(d)(2) because the potential for arbitrariness that this Court discussed in *McKoy* was realized in this case. This Court stated in *McKoy* that the erroneous jury instructions had the *"potential* for producing an arbitrary result." *State v. McKoy,* 327 N.C. 31, 43, 394 S.E.2d 426, 432-33 (1990). It concluded, however, "[t]here has been no showing here that the potential for arbitrariness, that is, one or more holdout jurors, was actually realized . . . ." *Id.*

There was a holdout juror in the case at bar. After three hours of deliberations, the jury returned deadlocked eleven-to-one on two occasions. At this point the trial court repeated that it would like the jury to have more time and raised the possibility that deliberations could be resumed the next day, Saturday, 21 December. Thirty-six minutes later the jury returned with a recommendation for sentences of death. According to defendant, the conjunction of the erroneous unanimity instruction and the fact that the jury was threatened with having to continue deliberations the Saturday before Christmas forced the one holdout juror to abandon whatever mitigating circumstance(s) he or she had found.

Defendant's argument is speculative at best. Under the express language of *McKoy,* defendant must show that the death penalty was "actually imposed 'under the influence of . . . [an] arbitrary factor.' " *Id.* All defendant has shown is that the recommendation could have been made because of the influence of the erroneous unanimity instruction on a jury anxious to get home for the holidays. Further, this situation, where one juror may have been willing to find mitigation, is the opposite of the situation we described in *McKoy.* In that situation, we pointed out the arbitrariness of allowing or requiring the imposition of the death penalty " 'where 1 juror was able to prevent the other 11 from giving effect to mitigating evidence.' " *Id.,* quoting *McKoy v. North Carolina,*

494 U.S. at ---, 108 L. Ed. 2d at 379. We find the argument here without merit.

For the reasons stated, we vacate the sentences of death and remand the case to the Superior Court, Robeson County, for a new capital sentencing proceeding.

Death sentence vacated. Remanded for new capital sentencing proceeding.