STATE OF NORTH CAROLINA v. LEROY McNEIL

No. 37A87

(Filed 29 August 1990)

1. **Criminal Law § 1352 (NCI4th)— death sentence—no express requirement of unanimity—McKoy error**

    Death sentences for two first degree murders were remanded for a new sentencing proceeding under *McKoy v. North Carolina*, 108 L. Ed. 2d 369, even though trial of this case was held before our trial courts began to uniformly instruct juries as to unanimity for mitigating circumstances and there was no express requirement here that the jury be unanimous, because the trial court stated at least three times that the jury's answer to all the issues must be unanimous. Viewed in the context of the overall charge, there is a reasonable likelihood that the jury interpreted the instructions here to require unanimity as to mitigating circumstances.

    **Am Jur 2d, Homicide § 513.**

2. **Criminal Law § 1352 (NCI4th)— death sentence—McKoy error—not harmless**

    A *McKoy* unanimity error in a death sentence was not shown by the State to be harmless because the verdict form revealed only that the jury found one or more mitigating circumstances to exist and it was impossible to determine which of the five specifically worded and one catchall mitigating circumstances submitted to the jury were found. There was substantial evidence that each of the mitigating circumstances submitted existed and the unanimity requirement may have precluded a juror from finding a circumstance which he or she thought had been established but which the jury did not unanimously find. N.C.G.S. § 15A-2000, N.C.G.S. § 15A-1443(b).

    **Am Jur 2d, Homicide § 513.**

ON remand by the Supreme Court of the United States, 494 U.S. ---, 108 L. Ed. 2d 756 (1990), to the Supreme Court of North Carolina for further consideration in light of *McKoy v. North Carolina*, 494 U.S. ---, 108 L. Ed. 2d 369 (1990). Heard on remand in the Supreme Court of North Carolina on 14 May 1990.

STATE v. McNEIL

[327 N.C. 388 (1990)]

*Lacy H. Thornburg, Attorney General, by William N. Farrell, Jr., Joan H. Byers, and Steven F. Bryant, Special Deputy Attorneys General, and Barry S. McNeill, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for the defendant appellant.*

MITCHELL, Justice.

At the 30 April 1984 Criminal Session of Superior Court, Wake County, the defendant was convicted of two counts of first-degree murder for the murders of Deborah Jean Fore and Elizabeth Faye Stallings. The jury found the defendant guilty of each first-degree murder, both upon the theory of premeditation and deliberation and under the felony murder rule. Upon the jury's recommendations after a separate capital sentencing proceeding, the trial court sentenced the defendant to death for each murder. On the defendant's direct appeal, this Court — in an opinion written by Justice Whichard, with Chief Justice Exum concurring in a separate opinion and Justice Frye dissenting as to sentence — found no error and upheld the convictions and death sentences. *State v. McNeil*, 324 N.C. 33, 375 S.E.2d 909 (1989). Thereafter, the Supreme Court of the United States granted the defendant's petition for a writ of certiorari and remanded the case for our further consideration in light of that Court's recent decision in *McKoy v. North Carolina*, 494 U.S. ---, 108 L. Ed. 2d 369 (1990). *McNeil v. North Carolina*, 494 U.S. ---, 108 L. Ed. 2d 756 (1990).

The evidence supporting the defendant's convictions and death sentences is summarized in this Court's prior opinion, *State v. McNeil*, 324 N.C. 33, 375 S.E.2d 909, and we will not repeat it here except as necessary to discuss the questions put before us on remand by the Supreme Court of the United States. On remand, we are required to answer three questions. First, did the jury instructions given at the defendant's sentencing proceeding create an unacceptable risk that individual jurors were prevented from considering mitigating evidence in making their sentencing decision, thereby violating the Eighth Amendment as construed by the Supreme Court of the United States in *McKoy*? We are required to answer this question affirmatively. Second, may harmless error analysis be used in reviewing any such constitutional error

in this case? We answer this question affirmatively. Third, was the error in this case harmless? In light of the recent decision by the Supreme Court of the United States in *McKoy*, we are required to answer this question negatively. Accordingly, we must now vacate the death sentences previously upheld by this Court on the direct appeal of this case. We must also remand the case to the Superior Court, Wake County, for a new capital sentencing proceeding.

## I.

[1] We first consider whether the jury instructions given at the defendant's sentencing proceeding violated the Eighth Amendment, as recently construed by the Supreme Court of the United States in *McKoy*, by creating an unacceptable risk that individual jurors were prevented from "consider[ing] and giv[ing] effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death . . . ." *McKoy v. North Carolina*, 494 U.S. ---, ---, 108 L. Ed. 2d 369, 381 (1990); *see Mills v. Maryland*, 486 U.S. 367, 100 L. Ed. 2d 384 (1988). For the reasons explained below, we conclude that the same type of error discovered and announced by the Supreme Court of the United States in *McKoy* was present here.

## A.

During the capital sentencing proceeding conducted after the defendant McNeil's trial, the trial court gave the jury printed forms the jury was to use in recording and returning its recommendations as to punishment. As the defendant had been convicted of two first-degree murders, the jury was given two such forms; each was entitled "Issues and Recommendation as to Punishment." Each form contained four sections, labeled "Issue One" through "Issue Four."

Issue One on each form was: "Do you *unanimously* find from the evidence, beyond a reasonable doubt, the existence of one or more of the following aggravating circumstances?" (Emphasis added.) For the murder of Deborah Jean Fore, the trial court submitted two aggravating circumstances, both of which the jury found to exist: (1) that the defendant had "been previously convicted of a felony involving the use of violence to the person," and (2) that the murder was committed while the defendant "was engaged in the commission of a robbery with a firearm." For the murder of

STATE v. McNEIL

[327 N.C. 388 (1990)]

Elizabeth Faye Stallings, the trial court submitted the same two aggravating circumstances submitted for the Fore murder, plus a third, that the Stallings murder was "especially heinous, atrocious or cruel." The jury found all three of those aggravating circumstances to exist.

Issue Two was: "Do you find from the evidence the existence of one or more of the following mitigating circumstances?" For both the Fore and the Stallings murders, the trial court submitted six possible mitigating circumstances, each of which is discussed in detail at a later point in this opinion. Unlike Issue One which required the jury to give a specific answer as to each aggravating circumstance, the jury was not required under Issue Two to specify whether it found each individual mitigating circumstance to exist. As a result, for each murder the jury only answered "yes," it had found "one or more" mitigating circumstances.

Issue Three was: "Do you *unanimously* find beyond a reasonable doubt that the mitigating circumstance or circumstances found by you is, or are, insufficient to outweigh the aggravating circumstance or circumstances found by you?" (Emphasis added.) The jury answered Issue Three "yes" for both the Fore and Stallings murders.

Issue Four was: "Do you *unanimously* find beyond a reasonable doubt that the aggravating circumstance or circumstances found by you is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by you?" (Emphasis added.) For each murder, the jury answered this issue "yes," and thereafter recommended that the defendant be sentenced to death for each murder.

B.

In *McKoy v. North Carolina*, 494 U.S. ---, 108 L. Ed. 2d 369 (1990), the Supreme Court of the United States held unconstitutional North Carolina's trial procedure in capital cases of requiring that jurors *unanimously* agree upon the existence of a mitigating circumstance before any juror could consider that circumstance during sentencing deliberations. The trial of this case in 1984, however, was held before our trial courts began to uniformly instruct juries as to that trial practice, and the jury instructions regarding mitigating circumstances here differed from those found unconstitutional in *McKoy.*

STATE v. McNEIL

[327 N.C. 388 (1990)]

Issue Two on the forms used in *McKoy* was: "Do you *unanimous-ly* find from the evidence the existence of one or more of the following mitigating circumstances?" *McKoy*, 494 U.S. at ---, 108 L. Ed. 2d at 376 (emphasis added). That general question was followed by a list of possible mitigating circumstances. *Id.* Alongside each possible mitigating circumstance, a space was provided for the jury to answer whether it had unanimously found that particular circumstance to exist. *Id.* Therefore, the jury instructions in *McKoy* differed from the jury instructions now before us in two respects: (1) Issue Two on the jury forms used in this case contained no express requirement that the jury be unanimous before finding the existence of a mitigating circumstance; and (2) the jury in this case was not required to state whether it found each individually listed possible mitigating circumstance to exist.

The State contends that since Issue Two on the forms used in this case did not contain an *express* unanimity requirement, the jury must have understood that it was not required to be unanimous as to the existence of mitigating circumstances; thus, *McKoy* error was not present in the sentencing proceeding in this case. We disagree.

To determine whether the jury instructions in this case violated the Eighth Amendment as construed by the Supreme Court of the United States in *McKoy*, we must decide whether there is a "reasonable likelihood" that the jury here believed it was required to apply "the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. ---, ---, 108 L. Ed. 2d 316, 329, *reh'g denied*, --- U.S. ---, 109 L. Ed. 2d 322 (1990). Issue Two on the forms given the jury in this case did not *expressly* contain a unanimity requirement regarding mitigating circumstances. However, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47, 38 L. Ed. 2d 368, 373 (1973) (citing *Boyd v. United States*, 271 U.S. 104, 107, 70 L. Ed. 857, 859 (1926) ), *quoted in Boyde v. California*, 494 U.S. at ---, 108 L. Ed. 2d at 327; *see also, e.g., Murrow v. Daniels*, 321 N.C. 494, 497, 364 S.E.2d 392, 395 (1988) (citing *Gregory v. Lynch*, 271 N.C. 198, 203, 155 S.E.2d 488, 492 (1967) (citing cases) ). We can only conclude that when viewed in the context of the overall charge, there is a reasonable likelihood that the jury interpreted the instructions here to require unanimity as to mitigating circumstances.

**STATE v. McNEIL**

[327 N.C. 388 (1990)]

In its charge to the jury at the conclusion of the sentencing proceeding, the trial court used the word "unanimous" no less than thirteen times while instructing the jury concerning the two "Issues and Recommendation as to Punishment" forms that the jury was to complete. In the final mandate, the trial court instructed the jury that: "Your decision, your answers to *any of the issues* as to your final recommendation *must be unanimous* . . . ." After the jurors had deliberated for approximately one day, the trial court inquired as to their progress. During that inquiry, the trial court stated: "Now as I indicated in my instructions to you, of course your answers to *each* of the issues *must be unanimous* in your recommendation in each case." Although the trial court never explicitly stated that the jury had to be unanimous concerning mitigating circumstances under Issue Two on the forms used, the trial court stated at least three times that the jury's answers *to all* the issues must be unanimous.

The State argues that the lack of an express unanimity requirement in Issue Two on the forms given the jury stands in plain contrast to the express unanimity requirements of Issues One, Three and Four on those forms, and thus no reasonable juror would have interpreted the forms or the instructions to require unanimity as to mitigating circumstances. We disagree. "Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the way lawyers might." *Boyde v. California*, 494 U.S. at ---, 108 L. Ed. 2d at 329. In this case in which the jurors were instructed at least three times by the trial court that they must be unanimous in their decisions on *all the issues* they answered, we are forced to conclude that, in their entirety, the jury instructions gave rise to a reasonable likelihood that some of the jurors were prevented from considering constitutionally relevant evidence. *See id.* The instructions thus contained the same type of error held to violate the Eighth Amendment by the Supreme Court of the United States in *McKoy*.

II.

[2] Having determined that a *McKoy* unanimity error occurred in this case, we must next consider whether a harmless error analysis may be undertaken. For the reasons set forth in *State v. McKoy*, 327 N.C. 31, --- S.E.2d --- (1990), we conclude that this case may be further examined to determine whether the constitutional error committed was harmless.

### III.

As the *McKoy* error in the jury instructions was of constitutional magnitude, "[t]he burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C.G.S. § 15A-1443(b) (1988). On the record before us, we are forced to conclude that the State has not carried this burden.

The trial court submitted six possible mitigating circumstances for both the Fore and the Stallings murders: (1) that the defendant had "no significant history of prior criminal activity"; (2) that the defendant's "capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired"; (3) that the defendant "confessed to the crime and did so shortly after the crime was committed"; (4) that the defendant "has an I.Q. of seventy-eight and is borderline mentally retarded"; (5) that the defendant "had been a good and useful employee for Rea Construction Company" prior to the killings; and (6) the mitigating circumstance of "[a]ny other circumstance or circumstances arising from the evidence" which the jury deemed to have mitigating value. The jury was not required to indicate whether it found each individual mitigating circumstance to exist; instead, for each murder the jury only indicated on the form provided that, "yes," it had found "one or more" of the mitigating circumstances to exist.

Given the verdict forms used in this case, it is impossible for this Court to determine which, if any, of the five specifically worded mitigating circumstances the jury found to exist. Nor can we determine which, if any, "other [mitigating] circumstance or circumstances" the jury found to exist under the sixth or "catchall" circumstance on each list. We only know that the jury found "one or more" mitigating circumstances to exist as to each murder. Thus, if substantial evidence was introduced at trial to support any two or more mitigating circumstances, the *McKoy* error has not been shown to be harmless, because the erroneous unanimity requirement may have precluded a juror from considering a circumstance which he or she thought had been established by evidence and was mitigating but which the jury did not unanimously find.

We express no opinion as to the existence of any mitigating circumstances. However, our review of the record reveals that substantial evidence was introduced from which a juror might reasonably have found *each* of the mitigating circumstances submitted to exist.

STATE v. McNEIL

[327 N.C. 388 (1990)]

The first possible mitigating circumstance submitted as to each murder was that the defendant had "no significant history of prior criminal activity." The evidence tended to show that in 1977, some seven years before the trial in this case, the defendant had pled guilty to voluntary manslaughter. Voluntary manslaughter is certainly a very significant crime. However, we are unable to say beyond a reasonable doubt that no juror could reasonably have found that a defendant's commission of a single very serious noncapital crime years before was *not* a significant *history* of prior criminal activity.

The second possible mitigating circumstance was that the defendant's capacity to "appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired." There was evidence at trial that the defendant consumed substantial amounts of alcohol on the weekend of the murders in question here. Expert testimony indicated that the defendant was an alcoholic, and his consumption of alcohol "impaired his judgment and impaired his brain and in that sense was a contributing factor to whatever behavior he engaged in." Given such evidence, we are unable to say beyond a reasonable doubt that no juror could reasonably have found this circumstance to exist and to be mitigating.

The third possible mitigating circumstance was that the defendant "confessed to the crime and did so shortly after the crime was committed." The murders were committed on 8 April and 10 April 1983. The defendant was arrested on 21 April and confessed on 23 April 1983. Even though fifteen days passed between the first murder and the defendant's confession, we are unable to say beyond a reasonable doubt that no juror could reasonably have found this time between the murders and the confession "short" enough to have some mitigating value.

The fourth possible mitigating circumstance was that the defendant "has an I.Q. of seventy-eight and is borderline mentally retarded." There was evidence supporting this possible mitigating circumstance, and a juror could reasonably have found this circumstance to exist and to be mitigating.

The fifth possible mitigating circumstance was that the defendant "had been a good and useful employee for Rea Construction Company" prior to the killings. There was substantial evidence supporting this possible mitigating circumstance. We are unable

to say beyond a reasonable doubt that no juror could reasonably have found this circumstance to exist and to be mitigating.

The sixth possible mitigating circumstance was "[a]ny other circumstance or circumstances arising from the evidence" which the jury deemed to have mitigating value. The defendant argues that, among other circumstances in mitigation, one or more jurors could have found that the defendant's demeanor at trial showed regret and remorse or otherwise had mitigating value. The defendant contends that, under *McKoy*, any such jurors should not have been prevented from finding and weighing such circumstances in their sentencing decision. "[E]vidence is not only what [jurors] hear on the stand but [is also] what they witness in the courtroom." *State v. Brown*, 320 N.C. 179, 199, 358 S.E.2d 1, 15, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). Given the evidence at trial and our inability to assess the defendant's demeanor from the written record, we are unable to say beyond a reasonable doubt that the defendant's contentions in this regard are without merit.

The State argues that no reasonable juror would have found any of the possible mitigating circumstances to exist with regard to either murder. However, the jury in this case in fact unanimously found as to each murder that "one or more" of the mitigating circumstances existed. Further, for reasons already indicated, we are unable to say beyond a reasonable doubt that one or more jurors could not reasonably have found all of the possible mitigating circumstances submitted to exist and to have mitigating value.

The State also argues that even if found to exist by one or more jurors, none of the mitigating circumstances could have influenced the jury's sentencing recommendation as to either murder. The State's arguments in this regard do not establish beyond a reasonable doubt that no juror might find the mitigating circumstances, however weak, both to *exist* and to have *some* mitigating value. While we express no opinion as to the existence of any of these circumstances, we are unable to say that a reasonable juror could not have found each of them to exist and to have some mitigating value.

From the written forms returned by the jury, we can only know that the jury found "one or more" mitigating circumstances as to each murder. Therefore, we are unable to determine how many of the possible mitigating circumstances submitted by the trial court the jury unanimously found to exist and considered

during sentencing. We do not know whether the trial court's instructions, which violated *McKoy* by requiring jury unanimity as to any mitigating circumstance, prevented any individual juror from finding an additional mitigating circumstance, not found by the other jurors, and giving it weight in mitigation in voting upon the jury's recommendations as to whether the defendant should live or die. Given this situation, we are required by the holding of the Supreme Court of the United States in its *McKoy* opinion to vacate the sentences of death against the defendant McNeil, previously upheld by this Court, and remand this case to the Superior Court, Wake County, for a new capital sentencing proceeding.

On this remand by the Supreme Court of the United States for reconsideration in light of its decision in *McKoy*, the death sentences entered against the defendant and previously upheld by this Court must be and are vacated. This case is remanded to the Superior Court, Wake County, for a new capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000.

Death sentences vacated; remanded for resentencing.