John Thomas NOLAND, Jr., Petitioner,

v.

Gary DIXON, Warden, Central Prison, Raleigh, North Carolina, Respondent.

No. C–C–88–217–M.

United States District Court, W.D. North Carolina, Charlotte Division.

Dec. 8, 1992.

James P. Cooney, Kennedy, Covington, Charlotte, NC, for petitioner.

Joan H. Byers, Atty. Gen. of N.C., Dept. of Justice, Raleigh, NC, for respondent.

## ORDER

McMILLAN, District Judge.

### Procedural History

During the October 25, 1982 session of Superior Court for Mecklenburg County, the petitioner was found guilty of assault with a deadly weapon with intent to kill inflicting serious injury upon Mary N. Milton; of first degree murder of Troy C. Milton; of first degree murder of Cynthia Jean Milton; of first degree burglary of the home of Troy and Mary Milton; and of first degree burglary of the home of Cynthia Milton. Upon recommendation of the jury, petitioner was sentenced to death in the first degree murder cases by the Honorable Robert W. Gaines, Judge Presiding.

The petitioner appealed his convictions to the North Carolina Supreme Court pursuant to N.C.G.S. § 15A–2000(d).

On October 2, 1984, the convictions were affirmed by the Supreme Court of North Carolina. *State v. Noland*, 312 N.C. 1, 320 S.E.2d 642 (1984).

A petition for Writ of Certiorari was filed with the U.S. Supreme Court.

On February 19, 1985, this petition was denied.

On June 14, 1985, The Honorable Robert M. Burroughs, Judge Presiding, sentenced petitioner to die on September 7, 1985 at 12:01 a.m. This sentence was stayed by order of the North Carolina Supreme Court on July 15, 1985.

On November 4, 1985, Petitioner filed a motion for appropriate relief pursuant to N.C.G.S. § 15A–1411, *et seq.*

An evidentiary hearing was held on March 10–11, 1986 before the Honorable Frank W. Snepp, Jr., Senior Resident Judge Presiding.

On September 8, 1986, the petitioner's motion for appropriate relief was denied in its entirety and judgment was entered on September 17, 1986.

On March 17, 1987, a petition was filed before the North Carolina Supreme Court for a writ of certiorari to review the opinion and judgment of the Superior Court.

On October 7, 1987, the North Carolina Supreme Court denied this petition.

On December 4, 1987, the petitioner petitioned the U.S. Supreme Court to issue a writ of certiorari to review the North Carolina Supreme Court's order denying petition for certiorari.

On March 7, 1988, the U.S. Supreme Court denied this petition.

On March 30, 1988, the Honorable Kenneth A. Griffin, Judge Presiding, sentenced the petitioner to die on June 3, 1988.

On May 5, 1988, this court stayed the petitioner's execution and directed that he file within ninety days a petition for writ of habeas corpus.

On August 19, 1988, the petitioner filed a petition for writ of habeas corpus, stating nine claims for relief.

The State filed its answer on October 13, 1988.

On May 7, 1990, the State filed a motion to amend its answer to the petition for writ of habeas corpus.

On July 2, 1990, petitioner filed a motion for summary judgment on his first claim for relief (that the jury instructions in the sentencing hearing unconstitutionally required jury unanimity concerning mitigating factors). The petitioner also filed a response in opposition to the State's motion to amend its answer. On January 28, 1991, the State of North Carolina filed its response.

On October 21, 1991, the court held a hearing on the State's motion to amend its answer and on the petitioner's motion for summary judgment as to his first claim for relief.

On November 8, 1991, the court denied the State's motion to amend its answer. 796 F.Supp. 1540.

On May 1, 1992, the petitioner filed a motion for partial summary judgment on his second and third claims for relief.

On May 26, 1992, the State filed its response in opposition to the petitioner's May 1, 1992 motion for partial summary judgment.

The petition lists nine claims for relief:

1. First Claim for Relief: Instructions requiring jury unanimity in determining mitigating factors at the sentencing phase;

2. Second Claim for Relief: Ineffective assistance of counsel at sentencing hearing;

3. Third Claim for Relief: Ineffective assistance of counsel at guilt hearing;

4. Fourth Claim for Relief: Violation of Due Process rights under *Wainwright v. Greenfield,* 474 U.S. 284 [106 S.Ct. 634, 88 L.Ed.2d 623] (1986);

5. Fifth Claim for Relief: Erroneous jury instructions at the guilt phase;

6. Sixth Claim for Relief: Arbitrary and capricious exercise of prosecutorial discretion in seeking the death penalty;

7. Seventh Claim for Relief: Petitioner was mentally incompetent to stand trial or be sentenced to death;

8. Eighth Claim for Relief: Imposition of the death penalty in North Carolina is arbitrary and capricious:

 A. Judicial arbitrariness in the imposition of the death penalty;

 B. Jury arbitrariness in the imposition of the death penalty;

9. Ninth Claim for Relief: Jury instructions at sentencing phase.

In this order, the court will address only the petitioner's motions for summary judgment on his first claim for relief and partial summary judgment on his second and third claims.

Motion for Summary Judgment on Petitioner's First Claim for Relief

 It is clear that the petitioner is entitled to summary judgment on his first claim for relief that the jury instructions during the sentencing phase required a unanimous jury verdict in determining mitigating factors. The unanimity requirement was struck down in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). The petitioner is entitled to a new sentencing hearing.

In the sentencing phase of petitioner's trial, the state court first instructed the jury that the State had the burden of proving three principles beyond a reasonable doubt:

First, that one or more aggravating circumstances existed.

. . . .

Second, that the aggravating circumstance found by you are sufficient—is sufficiently substantial to call for the imposition of the death penalty.

And third, that the aggravating circumstance found by you outweigh any mitigating circumstance found by you.

If you unanimously find all three of these things, beyond a reasonable doubt,

then it would be your duty to recommend that the defendant be sentenced to death.

Tr. at 1710.

The trial court next instructed the jury that its verdict would be in the form of answers to four issues. The jury was specifically instructed that it had to reach a unanimous decision on each issue: "After you have reached a unanimous decision as to each issue; and after you have made your recommendation in each of the cases, have your foreman mark the appropriate place." Tr. at 1737.

The third issue submitted to the jury was:

Issue Three:

Do you find one or more mitigating circumstances?

The jury was further instructed that if it found mitigating circumstances, it need not indicate which mitigating circumstances were found or not found.

In its verdict, the jury answered Issue Three "Yes," indicating that it had found at least one mitigating circumstance.

The State contends that *Mills* and *McKoy* don't apply here, because the jury was not told that it had to answer Issue Three, concerning mitigating circumstances, unanimously, since the instruction itself did not include the word "unanimously", as the other three instructions did.

However, when the State argued this issue on direct appeal before the North Carolina Supreme Court in 1984, it argued in its brief that "THE TRIAL COURT DID NOT ERR IN INSTRUCTING THE JURY THAT THEIR ANSWERS TO EACH OF THE ISSUES MUST BE AN UNANIMOUS DECISION." Brief at 19, filed April 3, 1984. The State further argued at that time that Noland's claim was governed by *State v. Kirkley*, 308 N.C. 196, 302 S.E.2d 144 (1983). Therefore "the unanimity requirement does not unconstitutionally limit a jury's ability to consider mitigation evidence since in determining whether or not a mitigating circumstance exists, the instructions complained of in no way better the jury's right to consider all the evidence relevant to that circumstance." Brief at

20. The State never contended, in its argument on direct appeal, that the jury was not required to be unanimous in its determination of the mitigating circumstances.

In addition, the North Carolina Supreme Court addressed the argument now put forward by the State that because there was no *express* unanimity instruction with respect to mitigating circumstances, *McKoy* was not violated. In *State v. McNeil*, the North Carolina Supreme Court held:

In the final mandate, the trial court instructed the jury that: "Your decision, your answers to *any of the issues* as to your final recommendation *must be unanimous.*"

. . . .

Although the trial court never explicitly stated that the jury had to be unanimous concerning mitigating circumstances under Issue Two on the forms used, the trial court stated at least three times that the jury's answers to all issues must be unanimous.

The State argues that the lack of an express unanimity requirement in Issue Two on the forms given the jury stands in plain contrast to the express unanimity requirements of Issues One, Three and Four on those forms, and thus no reasonable juror would have interpreted the forms or the instructions to require unanimity as to mitigating circumstances. We disagree. "Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the way lawyers might." *Boyde v. California*, 494 U.S. [370] at [380–381], 110 S.Ct. [1190] at 1198, 108 L.Ed.2d [316] at 329. . . . We are forced to conclude that, in their entirety, the jury instructions gave rise to a reasonable likelihood that some of the jurors were prevented from considering constitutionally relevant evidence. *See Id.* The instructions thus contain the same type of error held to violate the Eighth Amendment by the Supreme Court of the United States in *McKoy.*

*State v. McNeil*, 327 N.C. 388, 392, 395 S.E.2d 106, 109–110 (1990).

There is further support for this conclusion in the Fourth Circuit's opinion in *Maynard v. Dixon*, 943 F.2d 407 (4th Cir.1991). The Fourth Circuit found that the jury instructions in *Maynard*, which carefully did not mention a requirement of unaninity in the mitigating factors issue, but directed that the jury had to find unanimously the aggravating factors, did not violate *Mills* or *McKoy*. The *Maynard* court stated, "the court in *McNeil* held that the instructions violated *McKoy*, but its opinion turned not on the express and omitted unanimity requirement, which it found non-dispositive of the question, *see* 395 S.E.2d at 190–10, but instead on the additional instructions added by the trial court that all jury decisions had to be unanimous." *Maynard* at 420.

As in *McNeil*, the trial court in this case, after giving instructions on the four issues to consider decide in sentencing, told the jury, "After you have reached a unanimous decision as to each issue ... have your foreman mark the appropriate place." Tr. at 1737.

The court finds that the petitioner is entitled to summary judgment on his first claim for relief.

The petitioner is entitled to a new sentencing hearing. The U.S. Supreme Court wrote in *Mills*, "the Court has demanded even greater certainty [in death penalty cases] that the jury's conclusions rested on proper grounds." *Mills*, 486 S.Ct. at 376, 108 S.Ct. at 1866. Under *Mills*, if there is "at least a substantial risk that the jury was misinformed," resentencing must occur. *Id.* at 381, 108 S.Ct. at 1868.

*Mills* held that "it would certainly be the height of arbitrariness to allow or require the imposition of the death penalty" where a single juror prevented the other eleven from finding a mitigating circumstance, the absence of which resulted in the death penalty. 486 U.S. at 374, 108 S.Ct. at 1865.

In *Lockett v. Ohio*, the U.S. Supreme Court observed that the penalty of death is qualitatively different from other penalties, and held that its imposition "calls for a greater degree of reliability when the death sentence is imposed." 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978).

The jury found at least one mitigating factor in this case. However, there is no indication which mitigating factors the jury found, since it was instructed not to indicate which factor or factors it found.

From the instructions given in this case, a juror could reasonably believe that the jury had to be unanimous to find a mitigating circumstance. This meant that, if eleven jurors believed that a mitigating factor existed, and one juror did not, then that mitigating factor did not exist, and thus could not be weighed against the aggravating factor in Issue Four.

The Supreme Court in *McKoy* stated that this violated the principles of *Lockett:* "The unanimity requirement thus allows one holdout juror to prevent the others from giving effect to evidence that they believe call for a 'sentence less than death.'" *McKoy v. State of North Carolina*, 494 U.S. at 439, 110 S.Ct. at 1231.

Teague Exception

The State filed a motion to amend its answer to the petition for writ of habeas corpus a year and a half after filing the original answer. The State filed its motion to amend to raise the affirmative defense of non-retroactivity against petitioner's first claim for relief.

On November 8, 1991, this court entered an order denying the State's motion to amend. Therefore, the question of whether *Teague v. Lane* precludes the application of the holdings of *Mills* and *McKoy* is not reached, and the petitioner is entitled to a new sentencing hearing.

However, even if this question were reached, the petitioner would still be entitled to a new hearing based on the Fourth Circuit's decision in *Williams v. Dixon*, 961 F.2d 448 (4th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992).

The North Carolina Supreme Court ruled in 1984 that the jury unanimity instruction was constitutional, and found so again in 1988. *State v. McKoy*, 323 N.C. 1, 44, 372 S.E.2d 12 (1988). In 1990, the United States Supreme Court reversed the North

Carolina Supreme Court's decision in *McKoy,* and found that the jury unanimity requirement is unconstitutional. *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990).

The State asserts that *McKoy* cannot be applied retroactively, because it is a new rule and does not fall into one of the exceptions stated in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

■ In *Williams v. Dixon,* the Fourth Circuit Court of Appeals did not reach the issue of whether the holdings in *McKoy* and *Mills* were new rules, because it held that even if they were new rules, they fell within the second exception under *Teague.* 961 F.2d at 453. The Court of Appeals determined that

> the rules set out in *Mills* and *McKoy* are "bedrock procedural elements" and are "implicit in ordered liberty." The procedures they struck down have been described as "arbitrary and capricious." Those procedures did not provide for the "fundamental respect for humanity underlying the Eighth Amendment." *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991 [49 L.Ed.2d 944] (1976). Given the history of the Eighth Amendment jurisprudence and the constitutional requirement of individualized sentences, we believe that a rule striking down an arbitrary unanimity requirement has the same "primacy and centrality" of *Gideon.* [*Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).] Therefore, we hold that the *Mills* and *McKoy* rules fall within the second *Teague* exception and should be applied retroactively.

*Williams* at 456.

It is clear that under *Williams, McKoy* and *Mills* apply in this case. Under *McKoy* and *Mills,* the jury instructions given in the sentencing hearing in this case were unconstitutional, and petitioner Noland is entitled to a new sentencing hearing.

Because of this decision, the court will not address Claims Two (ineffective assistance of counsel at sentencing hearing), Six (arbitrary and capricious exercise of prosecutorial discretion in seeking the death penalty), Eight (imposition of the death penalty in North Carolina is arbitrary and capricious), and Nine (jury instructions at sentencing phase).

*Petitioner's Motion for Partial Summary Judgment on his Second and Third Claims*

The petitioner asserts as his second claim of relief, ineffective assistance of counsel at the sentencing phase, and as his third claim for relief, ineffective assistance of counsel at the guilt phase.

On May 1, 1992, petitioner filed a motion for partial summary judgment on his second and third claims of relief. However, in light of this court's decision on petitioner's first claim of relief, *supra,* which entitles him to a new sentencing hearing, the court will consider the petitioner's motion for partial summary judgment as it concerns only his third claim of relief.

The defendant entered a plea of not guilty by reason of insanity. He was represented at trial by Fritz Mercer, Public Defender of Mecklenburg County, and Jean Lawson, an assistant public defender who had never tried a *felony* case by herself before (she had assisted on one felony trial).

The petitioner makes the following factual allegations to support his claim of ineffective assistance of counsel at the guilt phase:

1) At trial Mercer and Lawson relied upon the State's psychiatrist, Dr. Billy Royal, to provide expert testimony concerning Petitioner's insanity defense. MAR Tr. at 170.

2) Dr. Royal was unable to give an opinion concerning Petitioner's sanity at the time of the crimes. Pet. for Habeas Corpus, App.M; MAR Tr. at 173.

3) Mercer and Lawson did not present a single expert witness who testified that Petitioner was insane at the time of these crimes. MAR Tr. at 173, 277.

4) Mercer and Lawson did not request the appointment of a psychiatric expert to assist them in the preparation of Petitioner's insanity defense. MAE Tr. at 174–75.

5) Lawson was unaware during this time that a request for the appointment of a psychiatric expert could be made. MAR Tr. at 175.

6) Mercer and Lawson never discussed the possibility of requesting the appointment of an independent psychiatric expert. MAR Tr. at 277, 303.

7) Jean Lawson, who had been with the Public Defender's office for less than a year, and had participated in only one felony jury trial (not as lead counsel) before this capital case, was given the responsibility of developing Petitioner's insanity defense.

8) By the first day of trial, Mercer and Lawson had not decided who would open and who would close, who would present the insanity defense, who would conduct a sentencing hearing, or who would cross-examine the State's witnesses.

9) By the first day of jury selection Mercer and Lawson had not obtained any expert opinion evidence that Noland was insane at the time of these crimes, nor, other than speaking with Dr. Royal, had they made any attempt to do so.

10) At the time of closing argument, Lawson and Mercer had not yet decided who would open and who would close or what issues each would argue. MAR Tr. at 184–85.

11) Lawson was surprised when Mercer informed the jury that she would argue the issue of second degree murder. She later testified that her thoughts were: " 'Oh my goodness, I don't know the first thing about second degree murder' and it never occurred to me that this was a case where second degree would be an issue.... I was not prepared for anything like that." MAR Tr. at 186.

The petitioner contends that Mercer and Lawson departed from objective standards of reasonableness for attorneys in the conduct of capital murder trials and the guilt phase of Petitioner's trial in that:

a) Lawson failed to possess the experience necessary to prepare an insanity defense in a capital murder trial;

b) Mercer was inattentive to the preparation of the insanity defense or the defense of the case;

c) They failed to call available witnesses in support of Petitioner's insanity defense;

d) They failed to consult with Petitioner concerning their decision not to present further available evidence on the issue of insanity;

e) They failed to insure that Petitioner was competent at trial;

f) They failed to raise the issue of Petitioner's competency to stand trial;

g) They failed to prepare the insanity defense, case presentation and arguments in a reasonably effective manner;

h) They failed to request the appointment of a psychiatric expert to evaluate Petitioner and assist them in the defense of the case;

i) They failed to object to the trial court's instructions on the issue of insanity and the jury's deliberations on the issue of first degree murder;

j) They failed to object to the introduction of evidence concerning Petitioner's exercise of his constitutional rights after his arrest, including his right to remain silent.

In his motion for partial summary judgment, petitioner alleges that the state post-conviction court erred in refusing to allow James Ferguson to testify as an expert on the objective standards of reasonableness under which attorneys trying capital murder cases operated at the time of the petitioner's trial.

The petitioner asserts that he is entitled to an evidentiary hearing under 28 U.S.C. § 2254(d) and *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In *Townsend,* the U.S. Supreme Court held that a federal court must grant an evidentiary hearing if one of the following can be shown:

(1) The merits of the factual dispute were not resolved in the state hearing;

(2) The state factual determination is not fairly supported by the record as a whole;

(3) The fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(4) There is a substantial allegation of newly discovered evidence;

(5) The material facts were not adequately developed at the state-court hearing; or

(6) For any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Townsend,* 372 U.S. at 313, 83 S.Ct. at 757.

The standards in paragraphs (1), (2), (3), (5), and (6) were adopted virtually verbatim and codified in 28 U.S.C. § 2254(d). However, *Townsend* and § 2254(d) differ in their applications. Section 2254(d) affords state court fact findings a presumption of correctness unless the habeas petitioner shows, or it otherwise appears to the federal court, that one of the factors in 2254(d) is present. The petitioner argues that when the fact finding procedure employed by the state court was not adequate or the material facts were not adequately developed at the state court hearing, the federal court must grant the petitioner an evidentiary hearing under *Townsend* and in that hearing determine whether the presumption of correctness under § 2254(d) applies.

Petitioner asserts that material facts were not adequately developed at the state court hearing and the petitioner was effectively deprived of any reasonable opportunity to demonstrate a violation of his Sixth Amendment right to reasonably effective counsel at the guilt phase.

At the hearing on the motion for appropriate relief, counsel for the petitioner attempted to present Mr. James Ferguson as an expert witness who would testify on the objective standards of reasonableness for attorneys trying capital murder cases. The Honorable Frank N. Snepp, Jr. declined to find Mr. Ferguson an expert on the objective standards of reasonableness for attorneys in criminal cases, stating that it would be impossible for any lawyer to say how a case should be tried, since different lawyers have different methods, and both may be successful. MAR Tr. 234.

MR. COONEY: Just for the record, Your Honor, so I understand, you are going to exclude Mr. Ferguson's testimony as not relevant?

THE COURT: Yeah, I don't think—if you want to make a tender of proof that he will say there is some standard of practice among lawyers trying death cases, and that is so-and-so, make that offer of proof, but I just think that is irrelevant to the inquiry before me.

MAR Tr. 237. Judge Snepp then asked Mr. Ferguson to summarize what his testimony would be, and he did, focusing his answer on the sentencing phase of the trial. MAR Tr. 238–240.

In the offer of proof, Mr. Ferguson testified, for the most part, about the objective standards for proceeding at the sentencing phase. Since the petitioner is entitled to a new sentencing hearing on other grounds (Claim One), the only issue the court is now considering is whether he is entitled to an evidentiary hearing to determine the objective standards of reasonableness for an attorney in a capital case during the guilt phase of the trial.

The State has brought forward several reasons why Petitioner is not entitled to an evidentiary hearing. First of all, the State contends that the state court's ultimate finding of whether counsel's various actions fell below an objective standard of reasonableness is not a factual finding which is binding upon this court on federal habeas review, but is instead a mixed question of law and fact. Therefore, this court must address the reasonableness issue anew regardless of this "mixed" finding by the state court. The State thus contends that this court is not bound by the state court's finding of whether counsel's actions were unreasonable under the first prong of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (that counsel's performance fell below an objective standard of reasonableness). The State contends that Petitioner cannot show that the state court failed to develop adequately the material facts necessary for a full and fair adjudication of his allegations of ineffective assistance of counsel.

In addition, the State contends that, since the state court allowed Mr. Ferguson to make a tender of proof, and since Mr. Ferguson's summary is in the record, this court does not need a further evidentiary hearing.

However, in its argument before the United States Supreme Court in requesting a denial of certiorari on this claim, the State argued:

> There is an adequate procedure already present by statute to handle this type of issue in Federal Courts. The Federal habeas corpus statute does not apply a presumption of correctness to state court findings where, among other thing,s the fact finding procedure employed by the State was not adequate to afford a full and fair hearing or that material facts were not adequately developed at the state court hearing.

\* \* \* \* \* \*

> Noland's claim that the Court's refusal to permit Ferguson to testify undercut the fairness of his hearing can be readily litigated in Federal District Court pursuant to the habeas corpus act.

State's Response at 27–28 (citations omitted).

In addition, in his tender, Mr. Ferguson did not address the standards for the guilt phase of the trial.

■ The court determines that the state court did not provide the petitioner an opportunity to develop the facts adequately for a full and fair hearing when it denied the tender of Mr. James Ferguson's testimony concerning the objective standards of reasonableness for the trial of capital cases during the guilt phase.

### Conclusion

The petitioner is entitled to summary judgment on his first claim for relief.

Granting Petitioner's motion for summary judgment on his first claim of relief means that the court does not reach claims Two, Six, Eight and Nine.

The petitioner is entitled to partial summary judgment on his third claim, and the state court's fact finding is not entitled to a presumption of correctness on this issue.

IT IS HEREBY ORDERED:

1) That the petitioner's motion for summary judgment on his first claim for relief is GRANTED and petitioner is entitled to a new sentencing hearing;

2) That the petitioner's motion for partial summary judgment on his second claim is not reached in light of the court's grant of summary judgment on his first claim;

3) That the petitioner's motion for partial summary judgment on his third claim is GRANTED;

4) That the state court's fact finding on the petitioner's claim of ineffective assistance of counsel at the guilt phase is not entitled to a presumption of correctness;

5) That petitioner's request for a new evidentiary hearing to develop the objective standards of reasonableness in trying capital cases at the guilt phase is GRANTED; and

6) That the parties are directed to brief the issues in Claims Four, Five and Seven for the court.